ERNEST N. SMITH *vs.* WILLIAM H. BARCLAY *et al.*

Argued April 19, 1892. Decided May 5, 1892.

**Evidence Examined.**—Evidence *held* not to justify the verdict, to the effect that under a contract of copartnership, entered into nominally between B. and F., the *wife* of B. became the copartner with F.

Appeal by plaintiff, Ernest N. Smith, as administrator of the estate of Lafayette H. Smith, deceased, from an order of the District Court of Otter Tail County, *Baxter, J.*, made February 18, 1892, denying a new trial.

Lafayette H. Smith and Henry H. Rice recovered a judgment October 5, 1876, against William H. Barclay in Cook County Circuit Court, Illinois. It was revived by *scire facias* in that court on November 6, 1885. Rice soon after sold and duly assigned to Smith his interest in the judgment. On July 29, 1891, Smith died intestate at Chicago, Ill., and plaintiff was there appointed administrator of his estate. A copy of his letters of administration was filed in the Probate Court in Clay County, and this action commenced there upon this Illinois judgment; but on demand the venue was changed to Otter Tail County, as defendant then resided at Fergus Falls. The First National Bank of Fergus Falls was on August 5, 1891, garnished, as having money on deposit belonging to William H. Barclay. Its cashier appeared and denied any indebtedness to him, and, on leave obtained, plaintiff served a supplemental complaint making the bank and Barclay's wife and minor son parties, as they claimed the $5,500 which Barclay had deposited in the bank. Meantime the defendant William H. Barclay made default, and judgment was entered against him February 19, 1892, for $3,516.97, the amount of the Illinois judgment with interest and costs.

The issues in the action under the supplemental complaint were tried at Fergus Falls, November 12, 1891. Six questions of fact involved were submitted to a jury. They found that the wife, Retta Barclay, was the partner in the Red River Milling Company with

George A. Forrester, and that her husband was not a partner; that the money received on the sale to Forrester was hers, and not her husband's; and that the money on deposit in the bank was a part of it, and was hers and not his. Plaintiff made a case containing exceptions, and it was settled, signed, and filed, and on it and the other files he moved the court for a new trial of the issues arising under the supplemental complaint on the ground that the verdict was not justified by the evidence. The court denied the motion, and he appealed.

*John E. Greene* and *William T. Blair,* for appellant.

The finding of the jury that Mrs. Barclay was a partner in the Red River Milling Company is manifestly and palpably against the evidence. The relief we seek in this case is warranted by the rulings of this court in *Hicks* v. *Stone,* 13 Minn. 434, (Gil. 398;) *Rheiner* v. *Stillwater St. Ry. & Tr. Co.,* 29 Minn. 147; *Pratt* v. *Pioneer Press Co.,* 30 Minn. 41; *Wright* v. *Fergus Falls Nat. Bank,* 48 Minn. 120.

Bearing upon the construction and effect to be given to contracts similar to the one set up by Mrs. Retta Barclay, and under which she claims title to the money on deposit in this case, are the following: *Wortman* v. *Price,* 47 Ill. 22; *Wilson* v. *Loomis,* 55 Ill. 352; *Sexton* v. *Martin,* 138 Ill. ——; *Dickson,* v. *Shay* 45 N. J. Eq. 821; *Tripp* v. *Childs,* 14 Barb. 85.

*Mason & Hilton,* for respondents.

The principal question to be determined on this appeal is whether the verdict is justified by the evidence. The jury found that Retta Barclay was a partner in the Milling Company, and that Wm. H. Barclay was not; that the earnings of that company belong to Retta Barclay, and not to Wm. H. Barclay. It was not material whether it was generally known that Retta Barclay was a partner in the Red River Milling Company, or whether her husband held himself out to be such partner. The plaintiff was not misled and never gave Barclay or the firm credit on the strength of any representation or course of dealing, and he was in no manner injured by

the way the business was conducted. *Chadbourn* v. *Williams*, 45 Minn. 294; *Laib* v. *Brandenburg*, 34 Minn. 367; *Hossfeldt* v. *Dill*, 28 Minn. 469; *Heartz* v. *Klinkhammer*, 39 Minn. 488.

Under the statutes of this state, a wife during coverture holds the profits and increase of her personal property as her separate estate, both as against her husband and his creditors. *Williams* v. *McGrade*, 13 Minn. 46, (Gil. 39.)

DICKINSON, J. This contest involves the question whether the defendant William H. Barclay, or his wife, the defendant Retta Barclay, was the real owner of certain funds deposited with the garnishee, the bank, to the credit of the wife. It is conceded that such funds, in the possession of the garnishee, are a part of the profits of a copartnership business carried on at Moorhead from about the 1st of June, 1890, to the latter part of April, 1891, under the name of the Red River Milling Company. There were but two members in the partnership. One of them was a Mr. Forrester. The plaintiff claims that the defendant William H. Barclay was the other partner. The latter does not answer to the complaint alleging this to be the fact. His wife claims that she was the copartner with Forrester. Upon a dissolution of the partnership, in April, 1891, William H. Barclay received $11,500, which represented one half of the profits of the business, and deposited it in the bank to the credit of his wife. This fund is the subject of this controversy. If she was really the copartner of Forrester the money belonged to her, and the plaintiff has no rights respecting the same. If the husband was the copartner the profits thus received belonged to him, and were subject to garnishment by the plaintiff, standing in the place of a creditor of the husband. Upon this issue the jury found in favor of the defendant Mrs. Barclay.

An examination of the case has convinced us that the verdict has no reasonable support in the evidence. It is true that Barclay and his wife both testify that the latter, and not the former, was the copartner with Forrester; but this bare statement is, in our judgment, so completely overborne by their own testimony, and by the undisputed facts of the case, that it is beyond reasonable belief.

It appears that in May, 1885, Barclay was engaged in a commission business in Chicago, Ill. Prior to that time a judgment had been rendered against him in that state in favor of the plaintiff's intestate; and, at the time above stated, Barclay was, as he shows by his own testimony, insolvent. At that time (May, 1885) a formal written agreement was entered into between Barclay and his wife, as appears by their testimony, and which was offered in evidence, by the terms of which she employed him to carry on for her, at Chicago, "the *brokerage and commission business* now carried on by said first party" (the wife) for the period of five years at an annual salary, agreed to be paid by her, of $2,000, payable monthly. In fact, she was not then engaged in such business. The business was carried on at Chicago for only about a year, as Barclay testifies, when he went to Wisconsin, and engaged in a *milling* business, but, as he now says, still acting under the above agreement with his wife, which, as will be seen, related to a wholly different subject. It is admitted by him that no new agreement was made. Afterwards he and his wife came to Minnesota, where Mrs. Barclay bought some mill property, and for some two years he conducted the business, still acting as her agent, under the original contract, as is stated in the testimony. In November, 1889, there was appended to that written contract the further agreement that "this foregoing agreement shall continue in force for another period of five years; said W. H. Barclay shall continue to manage the business of said Retta Barclay." During a part of the period covered by the preceding statement, Barclay was employed in the service of other persons at a salary paid by them. This statement of events prior to the formation of the partnership will suffice.

Confessedly the contract of copartnership was entered into verbally between Forrester and William H. Barclay. Forrester's testimony is to the effect that he and Barclay formed that copartnership; that, so far as he knows, Mrs. Barclay never had any interest in it, and never claimed to have. She was not in the state when the contract was entered into, and never personally took part in the making of the contract or in the management of the business. The defendants' claim is that, while Barclay entered into the partnership agree-

ment, he was acting in behalf of his wife, pursuant to instructions from her by mail. But it does not appear that this was communicated to Forrester, and it seems pretty certain, from the whole case, that he never understood that he had entered into a contract of copartnership with Mrs. Barclay, although he may have understood that a part of the capital to be invested was expected to come from property owned by her. The testimony of Forrester that he entered into the partnership with Barclay is not really opposed by any evidence going to show that Barclay professed to contract as the agent of his wife, and not personally for himself.

The manner in which the business was conducted is not only inconsistent with the defendants' contention, but it goes far to impeach the credit of the testimony on which their case rests. The lease of the premises where the business was carried on was made expressly with "George A. Forrester and William H. Barclay, copartners as Red River Milling Co."

Barclay was an active manager in the business, and in whole or in part attended to the accounts of the partnership. An account was kept with himself, and in his own handwriting, wherein he was charged with numerous sums of money received, and with goods supplied; but no account was entered with Mrs. Barclay.

The parties were to be equal partners. Forrester put $3,000 of capital into the business, and the other partner was to contribute a like sum, but only $50 was ever paid in on that account; and this was credited by Barclay to himself, not to his wife, on the books of the partnership.

Letter heads were used by the firm, bearing the name of W. H. Barclay as one of the partners.

When the partnership was dissolved a formal written agreement of dissolution was entered into and executed by Forrester and William H. Barclay,—in which they were specifically named as the copartners,—in which it was expressed that Barclay transferred his half interest in the business to Forrester in consideration of the payment to him of $11,500. He required and accepted a bond of indemnity from Forrester to protect him from liability for the debts of the firm.

This statement of the facts of the case is sufficient to show why

we cannot sanction or sustain the verdict of the jury. To our minds the testimony shows a very transparent device to shield from the reach of Barclay's creditors the profits realized by him from a partnership business in which he engaged. In our opinion the evidence, considered in the light of reason and common sense, wholly fails to support the conclusion that Mrs. Barclay, and not her husband, was Forrester's partner in this business.

Order reversed.

(Opinion published 51 N. W. Rep. 1166.)