MARY B. LENNON and Others v. JAMES HOWARD WHITE.[2]

May 23, 1895.

Nos. 9136—(35).

**Ejectment—Sufficiency of Evidence.**
Order denying a new trial reversed upon the ground that the verdict was not justified by the evidence.

Appeal by defendant from an order of the district court for Hennepin county, Elliott, J., denying a motion to set aside the special findings and verdict of the jury and for judgment notwithstanding said findings and verdict, and also a motion to set aside said findings and verdict and for a new trial. Reversed.

*Lawrence, Truesdale & Corriston* and *Henry M. Farnam*, for appellant.

*Child & Fryberger*, for respondents.

BUCK, J. This is an action in ejectment brought by the widow and heirs of John G. Lennon against the defendant to recover possession of certain real estate situate in Hennepin county, and also to recover damages for withholding the premises. It is admitted by the pleadings that John G. Lennon was the owner of the property in question on November 22, 1877.

The plaintiffs claim that John G. Lennon never executed a certain warranty deed dated November 22, 1877, nor the quitclaim deed of March 25, 1881. They also claim that Lennon was physically unable to execute the warranty deed of 1877, by reason of having suffered from a stroke of paralysis on November 9, 1877, and they attack the quitclaim deed of March 25, 1881, by disputing the genuineness of the signature. The defendant claims title through several mesne conveyances, among which are the two in controversy, but no attacks are made upon the other deeds.

The warranty deed purports to be made by John G. Lennon and Mary B. Lennon, his wife, to David B. Knickerbacker for the consideration of $1,600. John G. Lennon signs by making his mark,

[2] Reported in 63 N. W. 620.

and Mary B. Lennon signs by William H. Chamberlain, her attorney in fact. The witnesses to the deed are S. A. Reed and C. K. Christophersen, and the acknowledgment is taken in due form before S. A. Reed, a notary public in Hennepin county, with notarial seal attached. The deed was recorded November 22, 1877, in book 66, on page 404, in the office of the register of deeds of Hennepin county. The quitclaim deed of March 25, 1881, runs from John G. Lennon and Mary B. Lennon, his wife, to Thomas J. Buxton. The consideration named is $50, and the deed purports to be signed by John G. Lennon personally, and by Mary B. Lennon, by W. H. Chamberlain, her attorney in fact. The witnesses to the deed are H. E. Day and John B. Atwater, and the acknowledgment in due form upon the deed was taken before John B. Atwater, a notary public of Hennepin county, whose notarial seal was duly attached, and the deed recorded April 8, 1881, in Book 74 of Deeds, on page 626, in the office of the register of deeds of Hennepin county. The power of attorney from Mary B. Lennon to William H. Chamberlain to sell her real estate was executed November 9, 1877, duly witnessed by I. Atwater and R. W. Cummings, and acknowledged before the latter person as a notary public, and his notarial seal duly attached, and recorded November 22, 1877.

The case was tried before a jury, and special findings were submitted. The jury found that John G. Lennon did not execute either the warranty or quitclaim deed. Thereupon the defendant made a motion upon minutes of the court and stenographer that the special findings and verdict for the plaintiffs be set aside, and for judgment for the defendant notwithstanding the verdict, upon the ground that such verdict was contrary to the undisputed evidence, and not justified by law. He also asked that the findings and verdict of the jury be set aside, and a new trial be granted, for the same reasons, and for errors of law occurring at the trial, and duly excepted to by the defendant.

This court held, in Morrison v. Porter, 35 Minn. 425, 29 N. W. 54, "that clear and convincing proof is required to oppose the statutory authentication by which the proof of deeds is established." This doctrine is supported by a large number of authorities, notably by that of Insurance Co. v. Nelson, 103 U. S. 544; Howland v. Blake, 97 U. S. 624. In the latter case the court said: "The burden rests

upon the moving party of overcoming the strong presumption aris-
ing from the terms of a written instrument. If the proofs are
doubtful and unsatisfactory, if there is a failure to overcome this
presumption by testimony entirely plain and convincing beyond rea-
sonable controversy, the writing will be held to express correctly
the intention of the parties. A judgment of the court, a deliber-
ate deed or writing, are of too much solemnity to be brushed away
by loose and inconclusive evidence." The certificate of the ac-
knowledgment of a deed imports verity, and it certainly should not
be overcome, except by very clear and satisfactory evidence. Even
though the execution of the instrument is denied under oath, the
certificate of acknowledgment is prima facie evidence of its execu-
tion. Romer v. Conter, 53 Minn. 171, 54 N. W. 1052. The opinion
of the expert in this case that the signature was not genuine fell
far short of showing that it was a forgery. Even though John G.
Lennon signed the warranty deed by making his mark after his
name was written by another person, yet, if he acknowledged the
execution of the instrument, he adopted the signature, and made it
his own. Tunison v. Chamblin, 88 Ill. 378. See, also, Martindale,
Conv. § 251, and cases there cited in the notes.

It is very plain that the evidence in this case fails to come within
the rules above stated. The very unsatisfactory evidence of Mary
B. Lennon, wife of John G. Lennon, and of the expert witness for
plaintiffs, was substantially all of the testimony to uphold the in-
validity of the deeds. Upon the other side the validity of the deeds
was testified to by several of the witnesses to them and the notaries
public who took the acknowledgments, and by Chamberlain, the
attorney in fact, who as such executed them in behalf of Mrs. Len-
non, at the time of the alleged execution of the same by Lennon
himself. There was also very strong corroborative evidence of the
valid execution of the deeds. We think that the evidence is over-
whelming that the deeds were valid. They were regular upon their
face, and a good and sufficient consideration appears to have been
paid for the land therein described. The fact that for 15 or more
years the premises have been used by or been under the control of
defendant, or parties other than plaintiffs, without any claim of
right thereto by plaintiffs, adds some weight at least to sustain the
defendant's theory of the case. We say this without deciding the

question of the claim of defendant's title to the premises by adverse possession. All of these instruments have been of record since the time of their execution, and, of course, open to public inspection. It seems to us that to charge all of these parties who were witnesses, and the notaries and the party who was the attorney in fact, and the grantees in the deeds with forgery is most extraordinary; and this is especially so in view of the fact that no motive or interest is charged why they should commit such acts, and there is no fraud shown. The title to real property should never depend upon such frail testimony as presents itself in this case. It will be observed that the attack is not made upon the warranty deed alone, made in 1877, but also upon the quitclaim deed made in 1881, the witnesses and acknowledging officer in each case being different. The evidence wholly fails to prove the deeds to be forgeries, and the verdict of the jury is without sufficient proof to sustain it; and so palpably and manifestly is this the case that under the well-settled rule and practice of this court the order of the lower court denying defendant's motion for a new trial must be reversed. Seabury v. Schwartz, 50 Minn. 9, 52 N. W. 221; Smith v. Barclay, 49 Minn. 365, 51 N. W. 1166.

Order reversed.

CANTY, J. I concur in the foregoing opinion, not because of any controlling weight or verity to be given to the acknowledgments to the deeds, or to the ordinary presumption and the direct proof that the alleged signatures of the grantee and witnesses are genuine; but because I regard as controlling the following facts: During all the time after the making of the first deed and until October, 1886, when John G. Lennon died, this land was in the actual, open, and notorious adverse occupancy of those claiming under the deeds; that during all of this time after the execution of each deed it was on record; that during all of this time Lennon lived in the immediate vicinity of the land, and was capable of attending to his own affairs, but never made any claim to the land, or paid any taxes upon it. It should be held as a question of law that these actions speak louder than the opinions or pretended recollections of any witnesses as to matters which occurred years before the time when the testimony is given, and completely destroy the effect of plaintiffs' evidence impeaching the deeds.