GORDON R. CRAIG v. M. H. WALSO AND ANOTHER.[1]

January 19, 1934.

No. 29,590.

[1]Reported in 252 N. W. 332.

*Grimes & Toensing,* for appellants.
*Victor M. Petersen,* for respondent.

*DIBELL, Justice.*

Action to have the plaintiff adjudged the owner of a lot in Minneapolis and the defendants, husband and wife, to have no interest in it. The plaintiff's claim is that a deed under which the defendants claim title is a forgery. The court of its own motion submitted the question of forgery to a jury. The jury by its verdict found forgery. The defendants moved in the alternative for judgment notwithstanding upon this issue or a new trial. The motion was denied. The defendants appeal.

■ The deed involved ran from Mary E. Craig, the mother of the plaintiff, to the defendant M. H. Walso. It was dated October 15, 1930, and was acknowledged the same day before the defendant John Walso. He is the husband of the defendant M. H. Walso. The deed was filed in the office of the registrar of titles on October 27, 1931. Mary E. Craig died December 16, 1930.

Mrs. Craig covenanted in the deed that "she is well seized in fee of the lands and premises aforesaid * * * and that the same are free from all incumbrance, except that grantee agrees to pay to my son, Gordon Craig, twenty dollars per month during his natural life, beginning one year after my death; such payments to be a lien on said premises, but title to said premises shall pass absolutely to said grantee in fee, subject only to such lien."

The plaintiff in his complaint claims that the deed was forged by inserting in it the name of M. H. Walso as grantee, and further by inserting the clause relating to payments to the plaintiff. His claim is that his mother intended that the deed should run to him and that his name, and not that of M. H. Walso, should have been in it as grantee.

There is no evidence that the name Gordon R. Craig ever was in the deed. There is no claim that it was. There is no evidence of an erasure. The evidence is that there was none. There is no question but that Mrs. Craig signed the deed. Plaintiff's witness, a typewriting expert, testified that the name M. H. Walso was·not made by the same typewriter as the other parts of the deed and that the same is true of the words "she is" in the covenant of seisin; that these words were written on an L. C. Smith typewriter; and that the rest of the typing was made by an Underwood machine. It may be that the witness intended to say that the clauses relative to the making of payments were made by an L. C. Smith; but his language cannot be interpreted so.

The certificate of acknowledgment states that the grantor acknowledged the deed. It is some proof of the genuineness of the instrument. Morrison v. Porter, 35 Minn. 425, 427, 29 N. W. 54, 59 Am. R. 331; Lennon v. White, 61 Minn. 150, 152, 63 N. W. 620.

The evidence is insufficient to sustain a finding of the jury that there was a forgery. The issue has been tried, and there is nothing to indicate that a new trial would produce evidence more favorable to the plaintiff. There should be judgment notwithstanding upon this issue.

A judgment notwithstanding does not end all controversy and disputes between the parties. Indeed, if the finding of forgery were sustained, the plaintiff would not take title to the lot. It would go to Mrs. Craig's heirs. It is necessary, to put the lot in the plaintiff, to have something in the nature of a reformation; or a decree having like effect.

Mrs. Craig, though aged, was a woman of business ability. She probably knew what she wanted. She had in mind the satisfactory division of some of her property without probate. The defendant John Walso had been her attorney in a divorce suit and was her attorney in other matters. Their relations were confidential and fiduciary. He was the attorney of the plaintiff in a divorce suit and in other matters. Their relations were confidential and fiduciary. The explanation of the giving of a deed by Mrs. Craig in which her son, the plaintiff, should receive monthly sums of $20 is

explained upon the theory that she deemed him improvident and wasteful. Why she should give a deed to Mrs. Walso is unexplained. They had not met. Mrs. Walso was an elderly lady of 70. The plaintiff was 56. Mrs. Walso was to become the owner of the property upon the death of the plaintiff. The property was income-producing; it rented for something like $90 per month. There was no consideration for the deed except that expressed in it; and probably it could be found that Mr. Walso was the one really interested. There is evidence that Mrs. Craig at some time had in mind deeding the property described in the deed in trust for the benefit of the plaintiff. The deed to Mrs. Walso was not a trust deed.

The three heirs of Mrs. Craig met at the family home a few days after her death and signed this memorandum:

"Dec. 22, 1930.

"Property willed to Gordon Craig, Lindsay Craig & Bess Cline and will not be probated & is agreed to by the three undersigned.
No. 1 Bess Cline—Has $15,000.00 left to her & as a gift and is not included in estate
L. R. Craig—Deeded Morning Side residence.
(Gordon R. Craig—4921 Chicago Ave left in trust to him
( " R. " 5616 Xerxes Ave left to Gordon
Bess Cline 4837 Chicago Ave Duplex)
" " 4833 Chicago Ave Duplex) 12,000
Left to her )
Dec. 22-1930

Gordon R. Craig (Witnesses
Mary E. Cline (L. C. Cline
R. L. Craig (Gertrude Craig."

The Gordon R. Craig mentioned is the plaintiff. Lindsay Craig is a son and is the same person as R. L. Craig. Bess Cline, the same person as Mary E. Cline, is a daughter. The property described as 4921 Chicago avenue is the property mentioned in the deed. The property 5616 Xerxes avenue is the property in which the plaintiff lived.

The testimony of the parties interested relative to the memorandum is indefinite and often evasive. It may be a fair inference that the parties were getting together, agreeing how Mrs. Craig's property should go, determining whether the deeds should be effective according to their purport, how her estate should be probated, and what property should be included in and excluded from probate. From some of the evidence a query might arise whether the deeds from Mrs. Craig had been delivered. There is a suggestion from which it might be guessed that they were executed in blank. A number of deeds were executed by Mrs. Craig on October 15, 1930. Apparently they were kept by the defendant John Walso, who attended to their execution. There is evidence that in January, 1931, John Walso had the deeds and was querying some of the heirs as to what property they wanted. There may have been some disagreement among them.

There is a hint that the deeds were not to be delivered until after Mrs. Craig's death; and occasionally there is a reference to a will, as if the heirs had in mind that the property was coming to them by testamentary disposition. The deed to Mrs. Walso was not recorded until more than a year after its execution and ten months after Mrs. Craig's death.

The parties necessarily must submit to an investigation of the circumstances surrounding the execution of the deed to Mrs. Walso. If the pleadings are sufficient it may be had in the pending action; and if not sufficient the trial court's discretion may be invoked in asking an amendment. As noted above, there was a confidential relationship of attorney and client between the defendant John Walso and Mrs. Craig and the plaintiff; and the grantee in the deed was the attorney's wife. The evidence is that she knew little of the transaction.

The issue of forgery, found for the defendants, does not prevent a trial of the real controversy between the parties. The order denying the defendants' motion for judgment notwithstanding the verdict on the issue of forgery is reversed; and the other issues stand for trial.

Order reversed.

*OLSEN, Justice* (dissenting).

I concur in the holding that the evidence does not sustain the verdict on the issue of forgery but feel that the result should be a new trial of that as well as all other issues.

*LORING, Justice* (dissenting).

I concur in the views expressed by Mr. Justice Olsen.

[1]Reported in 252 N. W. 335.