# MATHILDA AMLAND v. HAZEL L. GROSE AND ANOTHER.[1]

October 18, 1940.

No. 32,391.

*David London,* for appellants.
*A. M. Gunn,* for respondent.

[1]Reported in 296 N. W. 170.

HILTON, JUSTICE.

In this action to set aside a deed plaintiff was successful. Defendants, dissatisfied, appeal.

Plaintiff, Mathilda Amland, is the widow of Thomas Amland, who died April 29, 1938. Prior to their marriage in 1927, each had a previous spouse and children, now adults, by them. During his lifetime Amland dealt in real estate. Plaintiff owned some property, and her husband performed some acts in connection with it; but, in general, there was not any commingling of property. Each relinquished any right to share in the other's estate.

In April, 1935, Amland negotiated with Thorpe Brothers, a real estate firm in Minneapolis, for the purchase of the premises involved. Thorpe Brothers acted as the agent of the owners, William Mayberg and wife. The earnest money contract, dated April 4, 1935, stipulated that Thomas Amland was to be the grantee. Amland paid the purchase price partly in cash and partly by the assumption of an existing mortgage on the premises. Plaintiff did not contribute anything.

The executed Mayberg deed named plaintiff grantee instead of her husband, but at his direction. It is dated April 25, 1935, and the acknowledgment April 27, 1935. On April 25, 1935, defendants claim that plaintiff went to the office of Henry W. Lauderdale, an attorney and real estate man whom both plaintiff and her husband knew, and there executed the deed here questioned running to Hazel L. Grose, a daughter by Amland's first wife. The deed here questioned bears an acknowledgment before Clara Mae Dickey, a notary in the Lauderdale office, dated April 25, 1935. The date was first written in pencil and then in ink. The remainder of the acknowledgment, except that printed, is typewritten. The deed bears the names of H. Taylor Lauderdale and Clara Mae Dickey as witnesses. The grantee's name appears to have been written with a typewriter different from that used for the other forms. From all their

testimony, it seems clear that neither Lauderdale nor Miss Dickey recalls the occasion of the execution. Both testified that they would not have attached their signatures if plaintiff were not present.

Plaintiff does not accept this version but claims that Amland forged her signature. It is plaintiff's contention that her husband went to Thorpe Brothers on the 25th and consummated the purchase. P. W. Evans, who represented Thorpe Brothers, testified that plaintiff was not present. Amland requested Evans to draft an instrument on a joint tenancy form, naming plaintiff and Amland the grantors, and leaving the space for the grantee's name blank. Plaintiff claims that later the name of Hazel L. Grose was filled in and plaintiff's signature forged. After this was done, Amland took the instrument to the office of the Lauderdale Company, and there, taking advantage of his business acquaintance, succeeded in getting an acknowledgment certified by the notary without plaintiff present. Plaintiff testified that in October, 1936, Amland requested her to execute a mortgage running to Hazel L. Grose but she refused. There was a refinancing of the property, but of this plaintiff evidenced very little knowledge.

The Mayberg deed was recorded May 31, 1935, and remained with the register of deeds until October 11, 1938. The deed here disputed was recorded September 13, 1937, and remained with the register of deeds until May 5, 1938.

On November 9, 1936, plaintiff was personally indebted to the Northwestern National Bank & Trust Company for $800, evidenced by a renewal note. On the date mentioned, $100 was paid, the $800 note surrendered, and the note designated as exhibit B for $700 was given with a maturity date of February 9, 1937. Plaintiff's claim is that the signature on the note was a forgery of her handwriting, and from this the signature on the deed was traced. The theory is that Amland wished to have an instrument bearing a signature that had all the semblances of validity to cite as

authority for the signature on the deed. According to plaintiff's brief, Amland succeeded in passing the forged note to the bank by "some sleight of hand manipulation."

There was the usual conflicting testimony by handwriting experts. Plaintiff's experts asserted the forgery and testified that the signature on the deed was a tracing from the note. Those for defendants acclaimed the genuineness of the signature.

In January, 1936, in an unlawful detainer proceeding, Amland declared that he was the agent of the owner, Mathilda Amland. Plaintiff claims that when Amland collected the rents and paid the taxes and interest on the mortgage he did so as her agent.

In the original complaint, verified on May 10, 1938, it was alleged that the deed was never signed "for the purpose or with the intention of conveying the above described premises to the defendant herein or anyone else." When the cause came on for trial, April 3, 1939, forgery was relied upon. After a continuance, the complaint was amended to charge this. Plaintiff admitted that she did not tell her attorney that the instrument was a forgery until shortly before the first trial. Defendants contend that the evidence shows that the idea of forgery originated on April 1, 1939, when the documents were taken to Mr. Caton for examination. In addition, it is argued, Caton first suggested that the instrument was a forgery and not plaintiff.

In response to a special interrogatory, the jury concluded that the deed was a forgery. The trial court adopted this and made findings, conclusions, and order favorable to plaintiff.

Point is made that it was reversible error to instruct the jury that plaintiff's burden was to establish forgery by a fair preponderance rather than by evidence that was clear and convincing. Such error as there was in that regard was not specified as such in the motion for new trial, and therefore the point is not open to question here. Hendrickson

v. Bannitz, 194 Minn. 528, 261 N. W. 189; 1 Dunnell, Minn. Dig. (2 ed. & Supps.) § 358a.

In light of the foregoing, the next point to consider is whether the evidence, most favorably construed, supports the conclusion that there was a forgery.

At the outset we must state, and this must be kept in mind throughout, that all of the facts of the case cannot be reconciled with the theories of either plaintiff or defendants. Amland's death has vacated the source of actual knowledge. Our function is to demonstrate merely that on all the evidence it either was or was not a fact issue for the jury pursuant to the special interrogatory.

Defendants argue that the original complaint did not charge forgery and that plaintiff admitted that she did not tell her attorney that the instrument was forged until shortly before the first trial. Obviously these factors merit consideration and lend probability to defendants' version. Still they are not decisive, but merely items of evidence. The jury might well infer that failure to assert forgery at once was due to the apparent genuineness of the instrument. Likewise, the fact that a handwriting expert was not employed until the Saturday before the first trial and then to examine the "typewriting on the deed" is extremely material but equally uncontrolling.

Defendants urge that there was no motive for the forgery. They say the reason that Amland directed that plaintiff should be the grantee of the Mayberg deed was "to make certain that the plaintiff could not claim title to this property and therefore saw to it that the deed from the plaintiff to the deceased's daughter was executed and acknowledged on April 25, 1935." If the instrument was executed on April 25, 1935, the contention presents a plausible, and one possible, explanation of the transaction. But if title vested in plaintiff and she thereafter refused to convey, then certainly there was a motive for forgery. The jury and the court were not under any compulsion to be-

lieve that the deed was actually executed on the date specified. Again the question of motive was properly for the jury.

Defendants argue that the evidence shows that the forgery could not have been accomplished by tracing from the note. Emphasis is placed on the fact that the note was in the possession of the bank from November 9, 1936, until February 9, 1937. If the execution of the deed was April 25, 1935, the argument is sound. It is also sound if the instrument was executed between November 9 and February 9. But, as we understand plaintiff's theory, the tracing occurred before exhibit B was taken to the bank on November 9, and not afterwards. The jury could conclude that this was true, and we cannot now say as a matter of law that they were wrong. So far as we can see, all the argument under this heading produces material favorable to defendants without demonstrating that as a matter of law plaintiff's testimony is false and impossible.

Emphasis is made of the fact that Amland did not destroy the deed and thereby leave simply the typewritten copies on the books of the register of deeds in existence. Defendants claim that if the instrument was a forgery he would have done this. Plaintiff has furnished as satisfactory an explanation as defendants have an assertion. Once again the argument shows that there was just an item of evidence rather than controlling material involved.

Defendants point out that it is unlikely that the acknowledgment is false. It is stated that Henry W. Lauderdale had foreclosed a mortgage under a power of attorney executed before Clara Mae Dickey. It is also brought out that in April, 1935, plaintiff executed an offer of sale to certain property giving her address as "c/o Henry W. Lauderdale." Such items are factors with which to contest portions of plaintiff's testimony and to theorize that if Amland was about to commit a forgery he would not seek those in an office where plaintiff had done business to aid him in the

accomplishment of his objective. This argument lends color to defendants' version, but, once again, the jury could still find the acknowledgment invalid. Defendants also argue that there was not a denial of the acknowledgment before the notary. A claim of forgery is a repudiation of the alleged forged instrument. The acknowledgment is only *prima facie* evidence and can be assaulted. 1 Dunnell, Minn. Dig. (2 ed. & Supps.) § 78; Craig v. Walso, 190 Minn. 499, 252 N. W. 332.

Other arguments do not merit comment. On all the evidence there was a fact question. The jury heard the witnesses, including the experts, and had many specimens of plaintiff's signature. The credibility and the inferences to be drawn from the testimony were matters entirely for the jury under the special interrogatory. In passing, it must be mentioned that the actual facts will probably never be known. Plaintiff has introduced sufficient evidence so that we cannot now say on the appeal that the jury should have found for defendants.

There was no error in denying the motion for a new trial on the ground of newly discovered evidence since the scope of discretion was not violated.

The order is affirmed.

LORING, JUSTICE (dissenting).

To me the plaintiff's case rests on too tenuous a theory to be entitled to credence. It is plaintiff's theory that Amland "determined to create the first of these forgeries on one of plaintiff's notes to the bank, and obtained possession of a blank note * * *; that he forged her name on it, and then immediately forged her signature on the deed by tracing it from the forged signature on the note. That by some sleight of hand manipulation he succeeded in passing over the forged note to the teller at the bank," and this theory is based upon the partisan testimony of expert witnesses, supported only by her belated denial after first

impliedly, at least, admitting the execution of the instrument in the original verified complaint. Certainly, the denial of purpose and intention contained in the original complaint is pregnant with the admission of execution. The theory that Amland forged a note and then traced the plaintiff's signature from this forged note onto the deed strains my credulity past the breaking point. I do not think that any verdict largely based on any such theory should be permitted to stand, and I believe that there should be a new trial in the interests of justice.

HOLT, JUSTICE (dissenting).

I concur in the opinion of Mr. Justice Loring.

STONE, JUSTICE (dissenting).

I concur in the opinion of Mr. Justice Loring.

UPON APPLICATION FOR REARGUMENT.

On January 3, 1941, the following opinion was filed:

PER CURIAM.

Appellants in their petition for rehearing have pointed out that we overlooked the fact that a second motion for a new trial was argued with permission of the trial court. There assigned as error was the court's instruction that plaintiff had to establish forgery by a fair preponderance of the evidence. The motion was denied.

Appellants' counsel, at the close of the instructions, in response to an inquiry from the trial court, stated, "I am satisfied with the charge." The record does not show that the court was requested to instruct that the evidence must be clear and convincing either before or after the charge to the jury, although counsel had the opportunity. This case falls within the familiar rule stated in Town of Wells v. Sullivan, 125 Minn. 353, 357, 147 N. W. 244, 246, wherein it was said:

"The court instructed the jury that the burden was upon plaintiff to adduce a preponderance of evidence * * * but

did not indicate the character or quality of the evidence to establish such highway by statutory user. The defendant now assigns error because the court omitted to state that the proof must be clear and convincing, * * * Conceding defendant [was] entitled to such instruction it was neither suggested nor requested. Under Ferber v. State Bank of Pine Island, 116 Minn. 261, 133 N. W. 611, there is no reversible error here."

The rule in the Ferber case is decisive against allowing the petition on this point. However, subject to the foregoing, the motion for reargument is granted on the question of the sufficiency of the evidence as to the question of forgery. Oral arguments to the extent of 15 minutes on each side will be heard on Wednesday, January 22, 1941. No further briefs are required.

AFTER REARGUMENT.

On January 31, 1941, the following opinion was filed:

HILTON, JUSTICE.

As appears from the original opinion, the issue is close on the facts. It is now considered that in the interests of justice the order under review should be reversed and that there should be a new trial.

So ordered.