## MARJORIE CREA v. JOSEPH HALL.

122 N. W. (2d) 610.

June 21, 1963—No. 38,697.

*Hyman H. Cohen,* for appellant.
*Tyrrell, Jardine, Logan & O'Brien,* for respondent.

SHERAN, JUSTICE.

The appeal is from an order of the district court denying plaintiff's motion for judgment notwithstanding the verdict or a new trial in an action for personal injuries.

On Monday, May 19, 1958, at about 7:30 p. m., plaintiff, Marjorie Crea, sustained personal injuries when an automobile, owned and operated by defendant, Joseph Hall, in which she was riding as a passenger, ran off a rural road in Baldwin Township, Sherburne County, en route from Sandy Lake to Princeton, Minnesota. Defendant, having been sued for the resulting damage, alleged that the plaintiff assumed the risks and hazards of riding as a passenger in his automobile at the

time and place of the accident with full knowledge of the risks and dangers involved. At the time of trial evidence was introduced adequate to support a jury finding that Hall was intoxicated at the time and place of the accident and that this state or condition was apparent to plaintiff at the inception of the trip terminated by the accident.

Subsequent to the trial one of defendant's witnesses, Roger Marturano, made statements inconsistent with his testimony given at the time of the trial on the issue of intoxication. It was on this "recantation," in part, that plaintiff based her motion for a new trial, the denial of which gives rise to the only legal issue presented for consideration on this appeal. In the language of plaintiff, it is this:

"In a negligence action for personal injuries by a passenger against her driver, where the paramount issue is assumption of risk based upon alleged intoxication of the driver, should a new trial be granted when the only independent witness on that issue substantially recants his testimony pertaining to the intoxication of the driver?"

These facts will be helpful in visualizing the evidentiary context in which the problem occurs: Defendant is a resident of St. Paul, where he operates a restaurant and bar. For approximately 6 months prior to the accident, plaintiff had been in charge of the restaurant. Prior to Monday, May 19, 1958, defendant and three friends had been "weekending" at the defendant's cottage located on Sandy Lake about 16 miles from Elk River. It was the intention of the group to return to St. Paul on the morning of Monday, May 19, but for some reason the automobile they were driving could not be started and it was taken to Zimmerman, Minnesota—midway between Elk River and Princeton—for repairs. While the car was being fixed defendant and his companions adjourned to Marty's Bar located in that village. During the afternoon of May 19, plaintiff came to Zimmerman from St. Paul by cab at the request of defendant and met him at the bar. After remaining in Zimmerman for a short period of time, plaintiff and defendant drove together to his cabin, which is located about 6 miles from Zimmerman. They were met at the cabin by the three friends who had been with defendant previously and who were transported by Marturano, who was the proprietor of Marty's Bar and also a deputy sheriff of the county.

Upon arriving at the cabin defendant went to sleep. Plaintiff and the others had something to eat. At about 7:30 p. m., plaintiff and defendant left the cabin and started to drive toward Princeton on the sandy, graveled road. Proceeding on this road in a northerly direction Hall came to a T-intersection. He applied his brakes, tried to turn to the left, but lost control of the car which left the road, rolled over, and caused the injuries for which the present action was brought.

Plaintiff testified at trial that she did not see Hall consume any intoxicants at Marty's Bar. She claimed she did not smell alcohol on him or notice anything peculiar about the way he was acting as they drove from Marty's Bar to the cabin. She said she did not observe Hall drink any intoxicants while at the cabin and that on the ride from the cabin to Princeton she noticed nothing peculiar about the way he looked, acted, or drove. Her knowledge of Hall's condition was a fact question for the jury in light of other testimony indicating such proximity to him as would give rise to knowledge of his condition if he was in fact intoxicated.

Defendant testified that he and three friends arrived at Zimmerman about 8 a. m. on the morning of the accident and that he had not been drinking prior to that time. He went to Marty's Bar around 9 or 9:30 in the morning and proceeded to drink brandy with water on the side. At about 2 in the afternoon he started to feel a little "woozy." At about 3 p. m. he was "fairly well intoxicated." He testified that during the course of the day at Marty's Bar he had consumed from 40 to 50 drinks. (In a pretrial deposition he said he consumed about 60 to 70 drinks.) He claimed that he stopped drinking at Marty's Bar at about 5 in the afternoon. The amount of time spent by him in the liquor store would have been, according to his testimony, approximately 8 hours. Defendant claimed that he had no recollection of who was riding with him from Marty's Bar to the cabin; whether the companions who met him at the cabin were there when he arrived or came later; or of what occurred at the cabin. In short, defendant testified that he was very drunk.

At the time of the trial Marturano testified that he had first observed

defendant between 4 and 5 p. m. on May 19 and served him brandy. After approximately ½ hour the group, including Marturano, left the bar. Marturano thought defendant "had enough to drink" and followed him to his car because he was worried about his driving. The witness answered "yes" when asked whether he thought defendant was in a state of intoxication at the time they were at Marty's Bar. The verdict for defendant was returned on November 20, 1961. According to an affidavit filed in support of the motion for a new trial, after Marturano had testified and again on December 1, 1961, in the presence of the sheriff of Sherburne County, Marturano said Hall was not actually intoxicated when he left Marty's Bar.

On January 16, 1962, Marturano's deposition was taken in an action by plaintiff against him based on the theory that plaintiff had sustained damage by reason of an illegal sale by Marturano to Hall at a time when Hall was obviously intoxicated. The following illustrative questions were asked and answers given:

"Q.   What, if anything, did you observe about Mr. Hall during the period of time he was in the tavern after you came in?

"A.   Well, first at first he sat at the bar and we gabbed a little bit and then he walked over and played the bowling machine and came back and gabbed some more, and then after talking for awhile I started getting to think that he was getting to the point where I wouldn't want to see him drive his car if he drank any more.

*   *   *   *   *

"Q.   Did you form an opinion at that time that he was intoxicated?

"A.   Not intoxicated, no.

"Q.   Well, what was it?

"A.   Well, I don't know. It's hard to explain it. Being a bartender, why, you can look at a guy, especially if he comes in often—well, in the course of an hour you can tell by the way he talks, you know, if you don't want to give him any more, if you figure it's safe for him to drive or if it isn't.

*   *   *   *   *

"Q.   Well, at any time while he was in your tavern did you form an

opinion as to whether he was under the influence or not under the influence?

"A. No.

"Q. You never formed such an opinion?

"A. No.

&ast; &ast; &ast; &ast; &ast;

"A. Let me tell you in my mind what intoxication is.

"Q. Go ahead.

"A. A man staggering drunk, staggering all over the place, that's what intoxication is to me.

&ast; &ast; &ast; &ast; &ast;

"Q. And will you tell us fully—or explain what you mean by your answer, this answer that you gave, that you thought that Mr. Hall had had enough to drink?

"A. Well, just from observations up to a certain point; anything over that, why, he would very likely to become intoxicated, you know. But up to that point I would say he was still in good enough shape to drive and that anything over that would be just too much for him to get into a car and drive.

&ast; &ast; &ast; &ast; &ast;

"Q. And what, if anything, did you tell the sheriff [following the trial] about what you had testified to at the trial?

"A. Well, I told him that he had had something to drink, but I didn't testify that he was intoxicated.

"Q. Well, is it a fact that you advised the sheriff that at the trial you had not intended and did not knowingly testify that the Defendant Hall in that case was intoxicated on the day of the accident?

"A. That's right.

"Q. That's what you told the sheriff?

"A. Yes.

"Q. And did you also tell this sheriff that in your opinion Hall was not intoxicated and that in your opinion he was competent to drive an automobile on that day? Is that what you told this sheriff?

"A. Yes.

&ast; &ast; &ast; &ast; &ast;

"Q. And isn't it a fact that you also stated at that time that at no time during the period of time that you saw Mr. Hall did he appear to be intoxicated or under the influence of intoxicating liquors, and, furthermore, that in your opinion he was fully competent and able to operate an automobile?

"A. Yes."

The trial court in the memorandum accompanying his order denying the motion for a new trial states:

"At the time of the taking of the deposition of Marturano in the Dramshop action, he was apparently on the horns of a dilemma, caught between a possible perjury charge and a distinct exposure to personal liability. This deposition testimony is quite consistent with his testimony in the trial herein, except where the phrase 'obvious intoxication' came up. Hence, little credence can be given to variations from his prior views and certainly not enough to justify setting aside of a verdict arrived at after a lengthy trial preceded by extremely ample time for pre-trial procedures.

"It was quite apparent to me that Marturano's testimony at the trial of this action was credible and that remains my conclusion, the subsequent deposition notwithstanding."

Plaintiff takes exception to the views expressed in the memorandum of the trial court, arguing that it was only a day or two following the trial that Marturano first asserted to the sheriff that defendant was not actually "intoxicated" when he left Marty's Bar. He was interrogated on December 1 in the sheriff's office at Elk River concerning his testimony. Plaintiff reasons that the pressures incident to being a defendant in an action for damages under the Dramshop Act did not exist then. There is some merit in this contention. However, the position of a deputy sheriff called upon to explain to his superior officer why he sold liquor to an obviously intoxicated customer and permitted him to drive upon the highway in such a condition was not an enviable one and could well account for "hedging" concerning the degree of Hall's inebriation on the afternoon of May 19. Considerations of self-interest were bound to come into play under such circumstances. Marturano's disclaimer of

his testimony as given at the time of the trial, in such a situation, does not, we feel, establish its falsity.

Plaintiff also urges that Hall's testimony that he had about 50 drinks of brandy on May 19 is inherently incredible and that the only corroboration of what would otherwise be an unbelievable story is the testimony of Marturano, whose position as deputy sheriff of Sherburne County made his words of greater significance than would ordinarily be the case. We have given this aspect of the matter serious consideration. Because of it, an order of the district court granting a new trial upon motion promptly made might have been justified. But this fact does not support reversal of the contrary ruling. Almost 3½ years elapsed between the date of the accident and the time of the trial. Plaintiff was put on notice that defendant would claim assumption of the risk by his answer and by his pretrial deposition. The other person or persons working at Marty's Bar were not deposed or called as witnesses on the issue of intoxication. Hall's actions as related to plaintiff were corroborative of intoxication. His testimony is that he called his place of business in the afternoon and when plaintiff answered persuaded her, for no logical reason, to travel by cab to Zimmerman. She arrived at about 5:30. He then drove her to the cabin, presumably for the purpose of eating dinner, but according to Marturano slept in a chair while his companions were being served. He drove her toward Princeton at her request to obtain return transportation to St. Paul—all within 2 hours of her arrival at Zimmerman. We do not feel that considerations of substantial justice require or permit the retrial of this case now, 5 years having already elapsed since the time of the accident.

In support of her position, plaintiff cites Worrlein v. Maier, 177 Minn. 474, 225 N. W. 399. In that case, an action for breach of promise, it was held that the trial court had abused its discretion in refusing to grant a new trial to the unsuccessful defendant on the ground of newly discovered evidence which was a letter apparently written by the plaintiff in which she stated, in effect, that her testimony had been false. The case does not help. Here the witness whose testimony was "recanted," according to the claims of plaintiff, was not a party to the action. The change or alteration of his testimony which is asserted rep-

resents a modification of his conclusions rather than an acknowledgment of perjury. The fact issue with respect to which he testified is amply supported by other evidence offered at trial exclusive of that now questioned. We have examined the other authorities cited by plaintiff and find no case which we consider to be inconsistent with our judgment that the order of the trial court should be affirmed under the circumstances of this case.[1]

Affirmed.

---

[1]Authorities cited by plaintiff include Podgorski v. Kerwin, 147 Minn. 103, 179 N. W. 679; Amland v. Grose, 208 Minn. 596, 296 N. W. 170; Parrish v. Peoples, 214 Minn. 589, 9 N. W. (2d) 225; In re Estate of Liberopulos, 245 Minn. 553, 73 N. W. (2d) 607; and H. P. Droher & Sons v. Toushin, 250 Minn. 490, 85 N. W. (2d) 273. Authorities from other jurisdictions cited by plaintiff include Farmers Insurance Exch. v. Moores, 247 Iowa 1181, 78 N. W. (2d) 518; Ogburn v. Murray (Fla.) 86 So. (2d) 796; Cincinnati, N. O. & T. P. R. Co. v. Zeder (Ky.) 328 S. W. (2d) 525; People v. Bowers, 9 Misc. (2d) 873, 170 N. Y. S. (2d) 546; Brown v. New York City Transit Authority, 27 Misc. (2d) 666, 205 N. Y. S. (2d) 250; Annotation, 10 A. L. R. (2d) 381. See, also, Cut Price Super Markets v. Kingpin Foods, Inc. 256 Minn. 339, 98 N. W. (2d) 257; Minder v. Peterson, 254 Minn. 82, 93 N. W. (2d) 699; Nathan v. St. Paul Mutual Ins. Co. 251 Minn. 74, 86 N. W. (2d) 503; Skog v. Pomush, 219 Minn. 322, 17 N. W. (2d) 641; Vasatka v. Matsch, 216 Minn. 530, 13 N. W. (2d) 483; Larson v. Heintz Const. Co. 219 Ore. 25, 345 P. (2d) 835; Dade Nat. Bank v. Kay (Fla. App.) 131 So. (2d) 24; Dec. Dig., New Trial, Key Nos. 105, 106.